In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00228-CR
______________________________


JACKY GLENN SYPERT, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 33354-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Jacky Glenn Sypert was indicted in this case for aggravated robbery


 and, in a
separate case, for two counts of robbery


 arising out of the same criminal episode.


 The
State also filed notice in the latter case of its intent to seek higher punishment based on
one prior felony conviction. The two cases were tried together. Sypert pled guilty in both
cases, and "true" to the enhancement allegation, before a jury. The jury assessed
punishment in each case at forty years' imprisonment. The sentences were ordered to run
concurrently. Sypert appeals, alleging a single point of error: that the trial court erred in
denying his motion for mistrial when a juror revealed possible bias. We overrule this
contention and affirm the judgment.


  
          During jury selection, the venire was asked whether anyone had family members
who had a previous experience with the criminal justice system. Many answered
affirmatively, and those who did were questioned further. Veniremember Robert Mitchell
did not respond. Mitchell eventually made it onto Sypert's jury. However, after the trial
court submitted the case to the jury, but before actual deliberations began, Mitchell wrote
the trial court a note:
During the voir dire exam, I was asked if anyone in my family was a victim of
a violent crime. I did not answer. I have since remembered that my brother
was robbed in the late 80's. Does that affect my being a juror in this case?
Robert Mitchell
 
In response to Mitchell's revelation, the trial court had the following discussion with Mitchell,
the prosecutor, and Sypert's trial counsel:
The Court: . . . Mr. Mitchell, I have received your note. I read the
note to the attorneys. As I understand it during the voir dire examination you
did not raise your hand on the issue if anyone in your family was the victim
of a violent crime. You did not answer at that time?
 
Juror Mitchell: That's correct. I didn't remember at that time.
 
The Court: Since being selected to be on the jury — y'all had not
started deliberating when you knocked on the door?
 
Juror Mitchell: No. They were reading the charges.
 
The Court: You said you since remembered that your brother was
robbed in the late 1980s. You're asking does that affect your being a juror
on the case. The question is not to us. The question is to you. Obviously,
you didn't recall it during the voir dire examination; is that correct?
 
Juror Mitchell: That's correct, and I don't think it will affect my
judgment, but I thought that it may be important to bring up to you. 
 
The Court: Well, it's important to bring it up. It's important to bring it
up if you can during the voir dire examination. We need to ask you — this
was in the 1980s; is that correct?
 
Juror Mitchell: That's correct.
 
The Court: So we're talking about 20 years ago?
 
Juror Mitchell: 20 years ago.
 
The Court: Was he injured in the robbery?
 
Juror Mitchell: No. It turned out to be one of his friends who pulled
a bee bee [sic] gun.
 
The Court: Was there any prosecution?
 
Juror Mitchell: I believe there was, but I don't know any of the details
of what happened to the fellow.
 
The Court: Is there anything about that Mr. Mitchell that would affect
your ability to be a fair juror in this case?
 
Juror Mitchell: No, sir.
 
The Court: You just wanted to bring that to our attention.
 
Juror Mitchell: That's correct.
 
The Court: I'm satisfied with that. Anything further?
 
[State]: Not from the State, Your Honor.
 
[Defense Counsel]: No, Your Honor.
 
The Court: If you'll return to the jury room and continue the process
then. Thank you very much.
 
[Defense Counsel]: Your Honor, while we're still on the record I would
like to make a motion for a mistrial.
 
The Court: I'm going to overrule that. Mr. Mitchell indicated it would
not affect his ability to be a fair juror. I'm taking that it was not significant
enough in his mind, he did not recall it in voir dire and facts and
circumstances as he articulated and that he's indicated it would not affect his
ability to be a fair juror. So I'm going to overrule the motion for mistrial and
we'll continue.
 
          Sypert now contends the trial court erred by overruling his motion for mistrial. 
I. Standard of Review
          The record before us clearly shows Mitchell withheld information during voir dire. 
The question we are called on to decide is what is the ramification of this error? The Sixth
Amendment guarantees the right to a trial by an impartial jury. U.S. Const. amend. VI. 
One aspect of this constitutional right is the opportunity to conduct "an adequate voir dire
to identify unqualified jurors." Morgan v. Illinois, 504 U.S. 719 (1992) (citing Dennis v.
United States, 339 U.S. 162, 171–72 (1950); Morford v. United States, 339 U.S. 258, 259
(1950)). In Salazar v. State, 562 S.W.2d 480, 482 (Tex. Crim. App. [Panel Op.] 1978), the
Texas Court of Criminal Appeals held that, "where a juror withholds material information
during the voir dire process, the parties are denied the opportunity to exercise their
challenges, thus hampering their selection of a disinterested and impartial jury." If the juror
did not intentionally withhold this information, that fact is nonetheless "largely irrelevant"
in determining whether the information withheld was material. Franklin v. State, 12 S.W.3d
473, 478 (Tex. Crim. App. 2000). Therefore, if a situation arises where material
information was withheld by a juror during voir dire, and if the appellant's subsequent
motion for mistrial is denied, on appeal the denial of that motion will be reviewed for
constitutional error. See Tex. R. App. P. 44.2(a); Franklin v. State, 23 S.W.3d 81, 83 (Tex.
App.—Texarkana 2000, pet. granted), aff'd, 138 S.W.3d 351 (Tex. Crim. App. 2004). 
Stated differently, in such a situation, we must reverse the trial court's ruling on the motion
for mistrial unless we are convinced beyond a reasonable doubt that a juror's withholding
of material information


 did not contribute to the defendant's conviction or punishment. 
See Tex. R. App. P. 44.2(a); Franklin, 23 S.W.3d at 83.
II. Materiality
          To determine materiality, we evaluate whether the withheld information would likely
reveal the juror harbored a bias or prejudice to such a degree that the juror should have
been excused from jury service. See Anderson v. State, 633 S.W.2d 851, 853–85 (Tex.
Crim. App. [Panel Op.] 1982);


 Salazar, 562 S.W.2d at 482–83. Such an evaluation
usually requires us to consider, among other things, the facts of the crime, the context of
the withheld information as it relates to the juror's personal life, and the physical, emotional,
and psychological peculiarities of the parties. If the withheld information touches on some
fundamental component of the charged crime or personal characteristic of the accused,
then we would necessarily conclude the withheld information was "material" to voir dire's
objective of eliciting that juror's potential bias or prejudice against the accused. For
example, if the defendant is charged with an intoxication offense, it is material information
that the prospective juror has a prejudice against persons who use alcohol. See, e.g.,
Wappler v. State, 183 S.W.3d 765, 774 (Tex. App.—Houston [1st Dist.] 2005, pet. filed). 
If the juror has a personal bias against the defendant, that is material information because
it impacts, among other trial aspects, how the accused's credibility might be evaluated. 
See, e.g., Vaughn v. State, 833 S.W.2d 180, 184–85 (Tex. App.—Dallas 1992, pet. ref'd). 
It is also "material" if the juror fails to admit a prejudice against a racial minority group of
which the accused is a member. See, e.g., Abron v. State, 523 S.W.2d 405, 409 (Tex.
Crim. App. 1975). And only those facts known by the parties before the previously withheld
information is first disclosed are relevant to our materiality determination, because it is at
that point where a trial court itself first determines the impact of the newly discovered
information. If subsequent questioning or evidence shows the delayed revelation to be
harmless, such evidence is necessarily relevant—but only with respect to our harm
analysis.
          In this case, Mitchell withheld information that his brother was robbed twenty years
ago by someone wielding a BB gun. Sypert had pled guilty to robbing someone while
wielding a knife. While the temporal proximity between the crimes was remote, and while
Mitchell was not himself the victim of the earlier robbery, we nonetheless believe this
withheld information was "material." Both crimes involved essentially the same charge: 
aggravated robbery. Based on the trial court and parties' limited knowledge of the earlier
event at the time of Mitchell's tardy revelation, it is also possible that Mitchell harbored a
desire to inflict a greater punishment on Sypert out of a need for transferred vengeance for
the brother's earlier victimization. Therefore, the information regarding the robbery of
Mitchell's robbery was "material" to the chief issue of Sypert's trial—that being the
appropriate punishment for Sypert's crimes—and the withholding of such directly impacted
Sypert's constitutional right to an impartial jury under the Sixth Amendment. 
III. Harm Analysis
          Having concluded Mitchell withheld material information during voir dire, our
standards for harm analysis requires us to reverse the trial court's judgment unless we are
convinced, beyond a reasonable doubt, that Mitchell's delayed revelation did not contribute
to Sypert's punishment. See Tex. R. App. P. 44.2(a); Franklin, 23 S.W.3d at 83. Sypert
cites Franklin, 23 S.W.3d 81, Franklin, 12 S.W.3d at 475, and Vaughn, 833 S.W.2d at
184–85, in support of his argument that we should reverse the trial court's judgment. We
will now address each of these cases in turn.
A. Vaughn
          In Vaughn, after the jury had been sworn and impaneled, one juror informed the trial
court that she knew the accused from high school. 833 S.W.2d at 184–85. That juror also
informed the trial court that she could not be a fair and impartial juror in the case due to her
knowledge of Vaughn. Id. at 185. The Fifth Court of Appeals held that, when the juror
"stated unequivocally that, with her knowledge of Vaughn, she could not be fair and
impartial in the case, bias was established as a matter of law." Id. (citing Sosa v. State,
769 S.W.2d 909, 918 (Tex. Crim. App. 1989); Anderson, 633 S.W.2d at 854)). There was
also no indication in the Vaughn record that this juror could or would set aside her bias
against the defendant. Vaughn, 833 S.W.2d at 186. Accordingly, the appellate court held
the trial court abused its discretion by denying Vaughn's motion for a mistrial. Id. at 186. 
          In the case now on appeal, Mitchell told the trial court there was nothing about his
brother being robbed twenty years ago that would impact his ability to be a fair juror in
Sypert's cases. Therefore, unlike Vaughn, the record here fails to establish Mitchell was
biased as a matter of law. We conclude Vaughn is distinguishable from the case now
before us.
B. Franklin
          In Franklin, 12 S.W.3d at 475–76, a juror (who had not responded during voir dire
questioning about anyone knowing the victim in the case) recognized the child victim when
the latter was called to testify. The juror informed the trial court, who then asked the juror
if she could base her judgment in the case solely on the evidence presented at trial rather
than her prior relationship with the victim. Id. at 476. The juror said she could. Id. 
Franklin moved for a mistrial and, alternatively, asked to be able to further voir dire the juror
at issue regarding the nature of the juror's relationship with the victim, that relationship's
duration, whether the juror could put aside that relationship, and whether that relationship
would tend to give more or less credibility to the victim's testimony. Id. The trial court
denied all relief. Id. The Texas Court of Criminal Appeals held "[t]he trial court erred in
denying [Franklin] the opportunity to ask questions . . . . ." Id. at 479.
          On remand to this Court for harm analysis, we determined there was an absence
(caused by the trial court's refusal to grant a mistrial and its refusal to permit additional
questioning) of any information sufficient to conduct a meaningful harm analysis. Franklin,
23 S.W.3d at 82–83. Therefore, under Tex. R. App. P. 44.2(a) (constitutional error), we
were required to reverse the trial court's judgment because we could not conclude, beyond
a reasonable doubt, that the error in the court below did not contribute to Franklin's
conviction or punishment. Id. at 83.
          The situation in the instant case is different. The trial court itself asked questions
of Mitchell. These questions were designed to reveal any bias or prejudice Mitchell might
have as a result of his brother being robbed twenty years ago. Mitchell affirmatively stated
nothing about the event would affect his ability to be a fair and impartial juror in this case. 
While such statements are not dispositive, Franklin, 23 S.W.3d at 83; Salazar, 562 S.W.2d
at 482, they may still be accorded some weight. And, more importantly, Sypert's counsel
was given an opportunity by the trial court to ask Mitchell additional voir dire questions. 
Sypert's counsel, however, did not ask any additional questions. Nor did the State. 
Additionally, while Sypert filed a motion for new trial, no hearing was conducted on the
motion, which was overruled by operation of law.


 See Tex. R. App. P. 21.8(c). Given the
remoteness of the event (twenty years ago), the fact that Mitchell knew few of the details
of what happened to that robber, the fact that Mitchell himself was not the victim of that
crime, Mitchell's own testimony that the incident would not affect his ability to be fair,
Sypert's affirmative waiver of the opportunity to further voir dire this juror, and the absence
of any claim by Sypert at trial that he might have exercised his peremptory strikes
differently, we are convinced, beyond a reasonable doubt, that Mitchell's withholding of
material information did not contribute to Sypert's punishment in this case.
          We overrule Sypert's sole point of error and affirm the trial court's judgment.




                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      June 27, 2006
Date Decided:         July 11, 2006

Publish